Rossell, J.
It appears to me, that the principal question for the consideration of the Court is, whether the possession of Fairly the defendant, was an adverse possession, yea or nay, ? For it seems to be allowed on all sides, that if it was actually adverse, our statute of limitations gave him a good title to the lands in question. It is contended by the counsel for the plaintiff, that although Fairly may have an equitable title, the legal one remained in Stephen Johnson, and was conveyed by the sheriff's deed to the lessor of the plaintiff; and that as Fairly came into possession by the consent of Emley, (the agent of Johnson, as is proved by an article of agreement given in evidence) he can be considered in no other light than as a tenant at will, in whose favor statutes of limitation never run.
In support of this doctrine, they have cited Coke Lit. sec. 70, 3 Comyn’s Dig. 60, Sir Tho’s Raymond, Cowper, 119, Swift’s System, Johnson’s N. Fork Term Reports, and several other authorities. The authorities from Coke, on which those of Comyns and Raymond seem to be bottomed, read in those words: síIf a man make a deed of feoffment to another, of certain lands, and deliver to him the deed, but not livery of seizin, he to whom the deed is made, may enter into, and hold the land, and occupy it at will, but he that made the deed may put him out when it plcasotk him." I confess at first view, there appears a strong similarity between the authority and the present caso; but if wé examine them closely, the supposed resemblance is destroyed, and it will be perceived that the authority will not apply. A deed of feoffment itself, without livery of uekdn, in the time of Littleton, was simply a permission from the lord or owner of the land to the feeffee to enter and occupy it; it conveyed no other right, legal er equitable, but that of bare possession, which right, unaccompanied with the essential part of any other title, was confessedly terminated at the will of the feoffor. [*] But in the case before us, there was not merely a permission to enter on and occupy the land in question, but an absolute contract to purchase and convey a fee-simple. Fairly then entered on the promises, not as a tenant to be put out as the whim or caprice «f Ms landlord should direct, but as a purchaser la his own right; and when he complied with the contract, was vested with an equitable title to the «¡tato, which the laws of Mew-Jersey would have protected *340 him in, and which he at any timo might have changed into legal one, by applying to the proper tribunal; or if the grantor had sought to- have ejected him from the land, the Court of Chancery by an injunction, would have stayed the proceedings, and decreed a specific performance of the agreement. What real resemblance then is there between an entry on lands by deed of feoffment only in England, in the time of Littleton, and an entry by virtue of an article of agreement of sale and purchase in New-Jersey?
But if we can suppose Fairly entered on these lands as a tenant at will, it is an acknowledged principle of law, that either party may put an end to such a tenancy at pleasure. When then he paid part of the purchase money, tendered the remainder, claimed the land as his own, demanded a deed, and continued to exercise all the rights of complete ownership, he most certainly set up a title as adverse to that of Johnson’s as can well be imagined.
It is further insisted on by the counsel for the plaintiff, that a title must be adverse in its commencement as well as in its continuance, or it is not within the statute. Cowper, Swift and Johnson, are said to support this doctrine. In the case from Cowper, Ld. Mansfield delivers it as law, — “That a man may come in by a rightful possession, and yet hold adversely without title; if he does, such holding over, under circumstances, is equivalent to an actual ouster, as in the case .of tenants in common. The possession of oiie tenant in common, as such, can never bar his companion; but if [*] ho refuses to pay the other, denies his title, claiming the whole, and continues in possession, this is adverse possession, and ouster enough;” In this all the other judges concurred, and Aston Justice, added — “What is adverse possession or ouster, if the uninterrupted receipt of the rents and profits for forty years is not? In Swift’s System I find nothing but what is in conformity to this doctrine. In Johnson, a learned judge in the State of New-York, has said, — “It has always been required, that not only the first possession was taken under a claim hostile to the real owner, but that such hostility had existed on the part of the succeeding tenants,” These expressions have received a broader construction than I am able to give them, from the whole of the case, and which goes to directly contradict the opinion of all the judges in the case cited from Cowper. But if we understand the opinion to be, that the statute of limitations does not begin to run until the possession became confessedly hostile, which hostility must continue for the whole term, it will be in perfect unison with the decisions in Cowper, and what I conceive to be the law in New-Jersey.
*341 It is further contended on the part of the plaintiff, that Fairly has only an equitable title, which cannot defend him in an action of ejectment. If indeed, the title was only an equitable one, the conclusion might be correct; but if I am right in supposing the possession of Fairly to have been an adverse one, even from the time of the lender, it has continued for more than twenty years before action brought; and what was in its commencement, an equitable title only, has been converted by the statute into a legal one.
Being satisfied on these points, 1 have not thought it necessary to notice several others that were raised in the discussion ; but am, from a view of the whole case, of opinion, that judgment be entered for the defendant.
Pennington, J.
There is no question but that the fee of the premises in controversy, in 1773, was in, [*] Stephen Johnson, and 1 incline to think, that the title acquired by the lessor of the plaintiff, from the sheriff of Hunterdon on a sale of the premises, under a judgment against the representatives of Stephen Johnson, made in pursuance of an act of Assembly then in force, was such a title as would enable the plaintiff to recover in this action, against a stranger to the title, in the wrongful possession of the land; nor do I think that a jury, under the evidence in the cause, would have been justified in presuming a deed from Johnson. This view of the subject places the controversy on the single point of the statute of limitations. There cannot, I apprehend, any difficulty arise as to the meaning and construction of the act of Assembly, Pat. 354. If the lessor of the plaintiff’s cause of action accrued, or the cause of the action of those under whom he claims title, accrued beyond twenty years before the commencement of this suit, tfie plaintiff must he barred, at least the remedy, if not the right, unless it he saved by some of the excepted cases in the act, and this is not pretended. The question then is, at what time did this light of action accrue? The answer is, as soon as John Fairly held the premises adversely to Johnson, or those claiming under him. Whether Fairly entered on the premises with the consent or approbation of Johnson does not appear by the case, but we find him in possession thirty years before action brought, under circumstances that afford a reasonable presumption, that he entered in consequence of an agreement in writing, for the purchase of the place; that the first year of his possession, he paid about a sixth part of the purchase money, and after all the payments became due, and about three years after he went into possession, he tendered to the agent of Johnson, with whom he made the contract, the residue, and demanded of him a deed; no evi *342 dence of paying any rent, or making any acknowledgement of holding the land under Johnson or any one else. That from the first possession, he treated the land as his own, and exercised every act of ownership over it, seems not to be [*] denied. It is unquestionably true, that where one man possesses the land of another by his consent, and without any claim of right in himself, even for an hundred years, the statute of limitations will not bar a recovery; and the reason is obvious, the owner cannot have a cause of action against a man who possesses his land with his approbation and consent; but the moment the possessor sets up his own right, and denies the right of the owner, that moment the owner has a right of action against him; if he sleeps over this right twenty years, the law says, the quiet and repose of society, requires that the right itself shall sleep forever. The question for the jury to decide was, did Fairly hold possession of the premises as his own, by his acts denying - the right of Johnson, or did he hold under Johnson, and by his consent? I think the jury had suificient evidence to say that he held as his own, setting the right of Johnson at defiance ; and if so, the finding was right, and ought not to be disturbed. Whether Fairly went into possession under an equitable title, or under no title at all, is, in my view of the subject, immaterial, if he held as his own, and denied the right of Johnson; as to the necessity of an hostile commencement of the possession to let in the statute of limitations, I think it is a mistaken notion. Lord Mansfield in Den v. Prosser, Cowper, 218, says — “Aman may come in by rightful possession, and yet hold over adversely ; if he does, such holding over, under circumstances, will be equivalent to an actual ouster.” Again in the same page, — “ If tenant pur auter vie hold for twenty years after the death of cestuy que vie, such holding over will, in ejectment, be a complete bar to the remainder-man or reversioner, because it was adverse to his title. And Willes Justice, in the same case, page 219, says, — “I think that adverse possession is now evidence of actual ouster.” I agree, that if Fairly went into possessiou by the consent of Johnson, under an agreement to hold under him until the money was paid and deed executed, he must be considered as a tenant at will, until he denied the right of Johnson, and held adversely to him; but there is no evidence of this. But [*] suppose even that he went into possession by consent, yet there is strong evidence of an adverse holding; the tendering the money was an act hostile to Johnson’s right; it was equivalent to saying, I have complied with my agreement, and I mean to hold the land as my own. Whether it was a legal tender made in *343 due form, is of no consequence, if it manifested an intention to hold the land to himself in his own right; Johnson’s offering to warrantee a part of the premises, except against the claim of Fairly, shews that he considered Fairly holding adverse to him. It appears to me, that the jury had sufficient evidence to presume that Fairly took possession of the premises as his own; but even if that was not the case, yet that he held the possession adversely to Johnson for nearly thirty years, and claimed the freehold as his own, in which case, he was protected by the statute of limitations.
As to the rejection of the exemplification of the record of a declaration of ejectment, said to have been served on a tenant of Fairly, I think it was correctly rejected; it could not he sot up against the statute of limitations, and I cannot perceive for what other purpose it could have been offered; it might have strengthened the proof of Fairly’s adverse possession, hut of this the plaintiff cannot complain. On the whole, I am of opinion, that the rule for a new trial must he discharged.
Khuumtiuck, C. J. — Concurred.
Rule discharged